UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BRANDON MALLOY,

        Plaintiff,

   -against-

CITY OF NEW YORK,                       **COMPLAINT**
ELLIOT COLON,
JOSEPH GRIMM,
DAVID GRIECO,
CHARLES SCHWARTZ,
JOSE DELGADO
DEVIN BAKER,
MATTHEW WALKER, and,
RENE DURAN,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff Brandon Malloy, by his attorneys, as and for his Complaint, hereby alleges as follows:

## **PARTIES, VENUE and JURISDICTION**

1. At all times hereinafter mentioned, plaintiff Brandon Malloy was an adult male domiciled in Kings County, in the State of New York, upon information and belief:

2. At all times hereinafter mentioned, defendant City of New York was a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acting by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and its employees.

3. At all relevant times hereinafter mentioned, defendant Elliot Colon, tax

number 905982, was employed by the City of New York as a member of the NYPD and held the rank of Deputy Inspector, but has since been promoted to Inspector. Colon is sued herein in his individual capacity.

4.	At all relevant times hereinafter mentioned, defendant Joseph Grimm was employed by the City of New York as a member of the NYPD and held the rank of Lieutenant. Grimm is sued herein in his individual capacity.

5.	At all relevant times hereinafter mentioned, defendant David Grieco, tax number 940216, was employed by the City of New York as a member of the NYPD and held the rank of Sergeant. Grieco is sued herein in his individual capacity.

6.	At all relevant times hereinafter mentioned, defendant Sgt. Schwartz, was employed by the City of New York as a member of the NYPD. Schwartz's first name is believed to be either John and/or Charles and his shield number is believed to be 5458. Schwartz is sued herein in his individual capacity.

7.	 At all relevant times hereinafter mentioned, defendant Jose Delgado, tax number 955523, was employed by the City of New York as a member of the NYPD and held the rank of Police Officer, but has since been promoted to Detective. Delgado is sued herein in his individual capacity.

8.	At all relevant times hereinafter mentioned, defendant Devin Baker, tax number 952439, was employed by the City of New York as a member of the NYPD and held the rank of Police Officer or Detective Specialist. Baker is sued herein in his individual capacity.

9. At all relevant times hereinafter mentioned, defendant Matthew Walker, tax number 959352, was employed by the City of New York as a member of the NYPD and held the rank of Police Officer or Detective Specialist. Walker is sued herein in his individual capacity.

10. At all relevant times hereinafter mentioned, defendant Rene Duran, shield number 7546, was employed by the City of New York as a member of the NYPD and held the rank of Police Officer. Duran is sued herein in his individual capacity.

11. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

12. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

13. As of September 6, 2018, plaintiff Brandon Malloy resided in a room located on the first floor of 469 East 25 Street in Brooklyn, New York with his wife Patricia. That room is referred to as the "Premises." The three-story building where the Premises were located is referred to herein as the "Building."

14. As of September 6, 2018, numerous other people and/or families resided on the first, second, and third floors of the Building, including an adult male whose initials are G.B. who resided on the third floor.

15. On or about September 1, 2018, defendant Delgado obtained a search

warrant (No.: 552/2018) for a the premises. The search warrant expressly limited the places to be searched to the plaintiff's first floor room and his (and his wife's) person.

16. During the early morning hours of September 6, 2018, various members of law enforcement, including the individual defendants and members of the NYPD's Emergency Services Unit, forcibly entered the premises, and seized and arrested plaintiff and others.

17. Defendant Colon was the ranking officer at the scene of the search. Defendants Grimm and Grieco were the other supervising officers on scene, other than those in the ESU, who oversaw the ESU officers while they were at the scene.

18. The defendants also arrested two other people inside the premises, as well as three other individuals who were found outside of the premises.

19. Plaintiff was on the third floor of the Building when the defendants and ESU arrived, where he was visiting as G.B.

20. When plaintiff came downstairs he was arrested by the defendants.

21. Although the search warrant was expressly limited to the plaintiff's room on the first floor of the Building, the defendants went to the third floor of the Building and searched the attic where they claim to have found a handgun.

22. They then also arrested G.B.

23. At the time of his seizure, there was no probable cause that would justify the seizure or arrest of plaintiff Brandon Malloy, nor was there a reasonable basis to believe that their seizure or arrest were lawful or otherwise legally permissible.

24. At the time of his arrest, plaintiff Brandon Malloy had not engaged in, and was not engaging in any unlawful conduct, or any conduct that could reasonably be viewed as unlawful.

25. Despite the continuing absence of sufficient legal cause to justify the initial seizure, much less his arrest, plaintiff Brandon Malloy was were nonetheless arrested, handcuffed, and transported to a local NYPD station house, where he was jailed against his will for a period of time.

26. The other people whom the defendants had arrested were also handcuffed and transported to a local NYPD station house, where they too were jailed against their will for a period of time.

27. Plaintiff and several others were eventually taken to Central Booking, where they were all was further jailed for a period of many hours.

28. While he was in defendants' custody, the individual defendants completed arrest paperwork in which they claimed that Brandon Malloy had engaged in various criminal conduct, including the possession of the handgun found in the attic.

29. The defendants also completed arrest paperwork in which they claimed that the other individuals arrested with Brandon Malloy also possessed that same handgun.

30. These general allegations were communicated to prosecutors at the Kings County District Attorney ("KCDA") by or at the direction of the individual defendants who were aware that these allegations were materially false.

31. Defendant Walker also spoke directly with the KCDA while Malloy

was in custody.

32. At no point did Malloy possess the handgun or exercise custody, control and dominion over the handgun, nor was there any reasonable basis to believe he did.

33. The decision to arrest Brandon Malloy, to engage in the fabrication of allegations of criminal conduct and the surrounding circumstances, and to communicate the manufactured and otherwise materially inaccurate and misleading factual claims to prosecutors were made jointly by the individual defendants, or with each other's knowledge and acquiescence, to justify plaintiff's unlawful arrest and persuade the KCDA to commence plaintiff's criminal prosecution.

34. To the extent that each or any of the individual defendants did not personally, affirmatively participate in said conduct, each defendant was aware that such conduct was occurring and would continue to occur, and deliberately and consciously failed to intervene in such conduct, despite ample opportunity to do so.

35. The individual defendants are therefore equally liable for the arrest and imprisonment of plaintiff Brandon Malloy by virtue of their personal actions and their deliberate failure to intervene in the other's unconstitutional conduct, and thus they were, at all relevant times herein, acting jointly and in concert.

36. The KCDA, despite defendants' best efforts to bring about plaintiff's criminal prosecution, declined to prosecute any of the people arrested, including Brandon Malloy.

37. Brandon Malloy was eventually released from defendants' custody without being charged in connection with the arrest, but not until after a period of about 37-40 hours had passed.

38. The length of Malloy's incarceration was extended longer than necessary because the defendants wanted to "debrief" Malloy and the other people arrested with him.

39. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## **FIRST CAUSE OF ACTION**

(False Arrest and Imprisonment and
Denial of a Fair Trial Pursuant to 42 USC §1983)

40. Plaintiff Brandon Malloy repeats and realleges each and every allegation set forth in the preceding paragraphs as if more fully set forth at length herein.

41. The individual defendants willfully and intentionally seized, arrested, and caused plaintiff Brandon Malloy to be imprisoned without any lawful basis, much less probable cause, and lacked any reasonable basis to believe probable cause existed.

42. To the extent that any of the individual defendants did not affirmatively seize or place plaintiff Brandon Malloy under arrest, each such defendant was aware that plaintiff Brandon Malloy's constitutional rights were being and would continue to be violated, and failed to take any steps to intervene in said unconstitutional conduct or otherwise protect plaintiff from harm, despite ample opportunity to do so.

43. As a result of his unlawful arrest by the defendants, plaintiff Brandon Malloy was imprisoned and deprived of his liberty.

44. Plaintiff was conscious of the deprivation of his liberty and did not consent to any such deprivation.

45. The individual defendants fabricated and withheld material evidence, and misled prosecutors in order to manufacture a justification for the initial seizure of plaintiff Brandon Malloy, as well as justify their subsequent decision to arrest and imprison him, despite the absence of probable cause.

46. The individual defendants forwarded the fabricated evidence to the KCDA or otherwise knowingly caused the KCDA to be materially mislead as to the true circumstances and facts surrounding the seizure and arrest of plaintiff Brandon Malloy, did so with the intent of bringing about and sustaining his criminal prosecution despite their knowledge that there was no probable cause to justify said prosecution, and in so doing caused plaintiff Brandon Malloy to be deprived of his liberty.

47. To the extent that any of the individual defendants did not affirmatively seize or place plaintiff Brandon Malloy under arrest, or fabricate evidence or engage in direct communications with the KCDA as alleged herein, said defendant was aware that the other individual defendant was or would be engaged in this unconstitutional conduct, and that plaintiff Brandon Malloy's constitutional rights were being and would continue to be violated, and yet failed to take any steps to intervene in said unconstitutional conduct or otherwise protect plaintiff Brandon Malloy from harm, despite ample opportunity to do so.

48. The individual defendants, individually and collectively, subjected plaintiff Brandon Malloy to (i) false arrest and imprisonment, and (ii) denial of due process and the right to a fair trial through the fabrication of evidence, thereby violating, or aiding and abetting in the violation of, plaintiff Brandon Malloy's rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

49. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff Brandon Malloy to suffer physical and emotional injuries, mental anguish, loss of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

(Section 1983 *Monell* Claim Against the Municipal Defendant)

50. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

51. In an Order dated November 25, 2009, in *Colon v. City of New York*, 09 CV 0008 (E.D.N.Y.), the Hon. Jack B. Weinstein reflected on the "evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department" and the "evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving" the falsification of the reasons for an arrest. Little has changed since this ruling some eleven-plus years ago.

52. The City's casual, approving treatment of David Grieco's well documented history of unrepentant misconduct is itself evidence that the municipal defendant has ratified the routine fabrication of evidence and misuse and abuse of authority

by NYPD members generally, and defendant Grieco in particular, such that the foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by the City of New York's deliberate indifference to the dangers posed by David Grieco and other, similar officers.

53. The municipal defendant was on notice well before September 27, 2019, that defendant Grieco had a history of engaging in misconduct, including, but not limited to, unlawful and otherwise arrests and fabrications of evidence to justify those arrests. Notwithstanding such notice, the NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to Grieco's conduct, covered up his further misconduct, and left Grieco in place to continue his pattern and practice of unconstitutional behavior.

54. According to dockets of local state and federal courts, as itemized in the complaint in *Laroc, et al., v. City of New York, et al.*, 20 CV 5277 (MKB) (SMG), and supplemented by information available through the website www.50-a.org, defendant Grieco has been named in numerous lawsuits concerning constitutional violations, including, but not limited to, the following:

    a. *Wilson v. City of N.Y.*, 10 CV 4206 (E.D.N.Y.) (settled for $25,000)

    b. *Inman v. Grieco*, 11 CV 1810 (E.D.N.Y.) (*pro se* case dismissed)

    c. *Jimenez-Jenkins v. City of N.Y.*, 12 CV 0002 (E.D.N.Y.) (settled for $24,000)

    d. *Jones v. City of N.Y.*, 12 CV 1580 (E.D.N.Y.) (settled for $65,000)

    e. *Johnson, v. City of N.Y.*, Index No. 3571/2012 (Kings Cnty.) (pending)

f. *Mitchell v. City of N.Y.*, 12 CV 0294 (E.D.N.Y.) (settled for undisclosed amount)

g. *Myrick v. City of N.Y.*, 12 CV 2544 (E.D.N.Y.) (settled for $35,000)

h. *Foster v. City of N.Y.*, 13 CV 5108 (E.D.N.Y.) (settled for $30,000)

i. *Bannister v. City of N.Y.*, 13 CV 5886 (E.D.N.Y.) (settled for $75,500)

j. *Kitchens v. City of N.Y.*, 13 CV 6105 (E.D.N.Y.) (settled for $11,500)

k. *Shepard v. City of N.Y.*, 13 CV 6142 (E.D.N.Y.) (settled for $3,500)

l. *Perry v. City of N.Y.*, 13 CV 7071 (E.D.N.Y.) (settled for $21,250)

m. *Johnson v. City of N.Y.*, 13 CV 7173 (E.D.N.Y.) (Rule 68 judgment for $7,501, and $15,000 in attorney's fees for one plaintiff, defense verdict for the other)

n. *Walker v. City of N.Y.*, Index No. 5360/2014 (Kings Cnty.) (settled for $22,500)

o. *Walker v. City of N.Y.*, Index No. 7761/2014 (Kings Cnty.) (settled for $60,000)

p. *Goodloe v. City of N.Y.*, Index No. 515363/2015 (Kings Cnty.) (dismissed on jurisdictional grounds)

q. *Walston v. City of N.Y.*, 15 CV 4480 (E.D.N.Y.) (summary judgment to defendants)

r. *Green v. City of N.Y.*, 15 6041 (E.D.N.Y.) (settled for $10,000)

s. *Spruill v. City of N.Y.*, Index No. 14638/2015 (Kings Cnty.) (Settled for undisclosed amount)

t. *McClarin v. City of N.Y.*, 16 CV 6846 (E.D.N.Y.) (pending)

u. *Burgess v. City of N.Y.*, Index No. 523191/2016 (Kings Cnty.) (pending)

v. *Mathison v. City of N.Y.*, Index No. 501518/2017 (Kings Cnty.) (settled for $12,000)

w. *Scott v. City of N.Y.*, 17 CV 1141 (E.D.N.Y.) (settled for $52,500)

x. *Vargas v. City of N.Y.*, Index No. 502637/2018 (Kings Cnty.) (pending)

y. *Grantham v. City of N.Y.*, Index No. 514006/2018 (Kings Cnty.) (pending)

z. *Wright v. City of N.Y.*, 515718/2018 12046/2020 (consolidated with *Grantham*, 514006/2018 (Kings Cty))

aa. *Hines v. City of N.Y.*, 18 CV 4678 (E.D.N.Y.) (settled for $75,500)

bb. *Johnson v. City of N.Y.*, 523899/2019 (Kings Cty) (pending)

cc. *Wood v. City of N.Y.*, Index No. 501534/2020 (Kings Cnty.) (pending)

dd. *Hernandez v. City of N.Y.*, 512046/2020 (Kings Cty) (pending)

ee. *Pompey v. City of N.Y.,* 20 CV 4574 (E.D.N.Y.) (pending)

ff. *Vasquez v. City of N.Y.*, 502535/2021 (Kings Cnty.) (pending)

gg. *DeCamp v. City of N.Y.*, 503381/2021 (Kings Cnty) (pending)

hh. *Baptiste v. City of N.Y.*, 515081/2021 (Kings Cty) (pending)

55. Grieco joined the NYPD in early 2006. Over the past 15 years, according to the CCRB's Members of Service Records website search engine, he has amassed at least 32 CCRB complaints, six of which were substantiated.

56. However, according to the website www.50-a.org, Grieco has been even more profilic, garnering 79 separate charges spread over 33 different complaints, with 12 such allegations substantiated.

57. The NYPD's Internal Affairs Bureau ("IAB") records are not yet publicly available, but as of 2016, IAB had substantiated seven different allegations of improper memo book entries and two failures to complete a stop and frisk report. More significantly, at least two of Grieco's substantiated failures to document his activities occurred in the context of an improper warrantless home entry. It was determined by CCRB and IAB, respectively, that on two different occasions Grieco improperly entered and private residences. These are but a handful of allegations that were before the IAB to the effect that Grieco has engaged in unlawful searches, home entries, improper stop and frisks, and similar conduct evincing a lack of concern for basic constitutional prohibitions on police abuses of authority. These allegations were detailed in an unsealed memorandum of law in *Johnson v. City of N.Y.*, 13 CV 7173 (E.D.N.Y.) in Document 68, docketed on May 9, 2016.

58. Yet, not only has Grieco avoided any meaningful discipline, the NYPD has actually promoted him multiple times. He was made detective on August 1, 2016, and then promoted to Sergeant on June 30, 2017.

59. Notwithstanding the above litany of complaints concerning Grieco's propensity for misconduct and utter disregard for the constitution, there were, on information and belief, no meaningful investigations into many or most of these complaints, and certainly no attempt whatsoever by the NYPD or the City of New York to examine

Grieco's conduct holistically. Put differently, the City was aware of this pattern of misconduct and dishonesty by Grieco. Yet, upon information and belief, there was no effort to modify, increase, supplement, or otherwise intensify Grieco's supervision, or otherwise ensure that he had not and would not engage in or continue to engage in such blatant misconduct.

60. In this case, Grieco was supervised during the warrant execution at the Building by defendant Colon, who has himself been disciplined by the NYPD for making arrests without sufficient legal authority. For instance, on October 26, 2017, nearly two years before the arrests at issue here, then Deputy-Inspector Colon arrested or caused to be arrested three separate people. He was brought up on charges within the NYPD following a finding by the CCRB that these arrests were unlawful under case number 2019-20395. Finally, on June 11, 2021, following a three-day trial, he was found guilty of all three charges.

61. Further emphasizing the significance of Colon's misconduct, Commissioner Dermot Shea overruled Assistant Deputy Commissioner Nancy Ryan's recommendation that Colon forfeit 15 vacation days, and instead imposed a forfeiture penalty of 45 vacation days.

62. The City of New York's refusal to impose any discipline, to conduct any meaningful investigation, or to otherwise express even the slightest scintilla of concern that Grieco was prone to deliberate and repeated unconstitutional searches, seizures, and arrests was a clear and unequivocal endorsement of Grieco's misconduct that could only be understood as a ratification of his past misconduct, and an encouragement that he continue

to use force in this fashion.

63. Such actions by the City of New York are a reflection of the municipal defendant's repeated and untenable abdication of its responsibility to supervise and discipline its employees, and to otherwise protect the public from officers the NYPD knows are a threat to the public's safety and well being, and evince a complete disregard and deliberate indifference to the rights and welfare of those with whom these officers, and Grieco in particular, interact.

64. By leaving Grieco unattended and in a supervisory role means that not only will his misconduct continue unabated, it will be taught and passed on to younger officers in his command, who will quickly learn–as has defendant Casillas–that they are free to behave as they see fit, with the blessings of the NYPD and the City of New York.

65. These actions further reflect a policy, custom, and practice, or a ratification thereof through a demonstrated failure to act to curtail such behavior, and thus the aforesaid policies, procedures, regulations, practices and/or customs of the municipal defendant were, collectively and individually, a substantial factor in bringing about the aforesaid constitutional violations by the individual defendants generally, and Grieco in particular.

66. The City's abdication of its duty to supervise its police officers, and its tacit, if not overt, endorsement of excessive force and similar misconduct, reflects the City's deliberate indifference to the established risks that such conduct poses to the public at large.

67. By reason thereof, the individual defendants have violated 42 U.S.C.

§1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

68. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

69. The defendants treated plaintiff in a markedly and significantly different manner than they do any other resident or person present in the City of New York.

70. Upon information and belief, members of the public repeatedly, flagrantly, and openly cross the City of New York's roadways outside of the crosswalks, otherwise engaging in what is known commonly as "jaywalking," and do so without any fear that they are going to be arrested or otherwise subjected to criminal process.

71. Upon information and belief, the NYPD, even when authorized to do so, does not arrest people for jaywalking nor does it issues criminal summonses or desk appearance tickets for jaywalking.

72. By choosing to arrest the plaintiff in this instance, the defendants were deliberately treating plaintiff in a manner that was inconsistent and contrary to how it chooses to treat the remainder of adults in the City of New York.

73. The defendants had no legal authority to seize plaintiff or otherwise compel his appearance at the station house, much less to compel him to speak with officers investigating a crime.

74. Defendants' disparate treatment of plaintiff was motivated not by any rational and reasonable factor related to his conduct or the law in question, but rather for an

entirely ulterior and collateral motive: to forcibly bring him to the station house against his will and in violation of his constitutional rights under the Fourth and Fourteenth Amendments so that he could be questioned as a witness about a matter wholly unrelated to his arrest.

75. Even if defendants' conduct is not related to plaintiff's membership in a protected class, there was no rational basis for defendants to arrest plaintiff or otherwise treat plaintiff differently than it does other similarly situated people.

76. By arresting plaintiff for allegedly jaywalking, the defendants violated the Equal Protection Clause by their selective enforcement against or selective adverse treatment of plaintiff.

77. As set forth herein, plaintiff, when compared with others similarly situated, was selectively treated, and that this selective treatment was based on impermissible considerations.

78. By engaging in such conduct, the defendants have violated the plaintiff's right to equal protection under the law as provided by the Fourteenth Amendment to the United States Constitution.

79. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the individual defendants and defendant City of New York as follows:

i. actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. actual damages against defendant City of New York in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
October 25, 2021

LUMER LAW GROUP
Attorneys for Plaintiff

Michael Lumer, Esq.
233 Broadway, Suite 900
New York, New York 10279
(212) 566-5060